RECEIVED
IN MONROE, LA

MAY 1 2 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

**ROBERT WEAVER**

**VERSUS**

**CCA INDUSTRIES, INC.**

**CIVIL ACTION NO. 01-2096**

**JUDGE ROBERT G. JAMES**

**MAG. JUDGE JAMES D. KIRK**

**RULING**

Pending before the Court are motions for partial summary judgment filed by third party Plaintiff CCA Industries, Inc. ("CCA") and Intervenor-Plaintiff Evanston Insurance Company ("Evanston") [Doc. No. 115] and by third party Defendant New York Marine and General Insurance Company ("NYMAGIC") [Doc. No. 116].

For the following reasons, CCA and Evanston's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART, and NYMAGIC's Motion for Partial Summary Judgment is also GRANTED IN PART and DENIED IN PART.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Robert Weaver ("Weaver") brought this lawsuit against CCA on the basis of injuries he allegedly sustained from ingesting "Permathene."

In 1995, Weaver began taking Permathene, an over-the-counter diet drug/appetite suppressant which contains phenylpropanolamine ("PPA"). Eleven days after he began taking Permathene, on or about August 24, 1995, Weaver suffered a hemorrhagic stroke. Weaver contends that the PPA in Permathene caused his stroke.

On October 12, 2001, Weaver filed suit against CCA, alleging that it "manufactured, promoted and marketed products containing PPA directly to consumers by making

representations regarding the safety of their products and misrepresentation or omissions regarding the risks of their products." [Doc. No. 1, ¶ 3]. Weaver further alleges that CCA "failed to properly advise consumers of the known risks of PPA," including hemorrhagic stroke. [Doc. No. 1, ¶¶ 2-3]. Weaver has asserted products liability claims against CCA, contending that Permathene was unreasonably dangerous because of its defective manufacture, its defective design, CCA's failure to provide an adequate warning about the risks associated with Permathene, CCA's failure to adequately and properly test Permathene, and the failure of Permathene to conform to the express warranty issued by CCA. [Doc. No. 1, ¶¶ 17, 26].

CCA admittedly formulated, labeled, marketed, and sold Permathene, but Permathene was manufactured by Phoenix Laboratories, Inc. ("Phoenix"). Phoenix purchased a products and completed operations insurance policy from NYMAGIC, No. MMO-24289LP201 ("the NYMAGIC Policy"). The NYMAGIC Policy was issued on a claims-made basis and had limits of $1,000,000.00. The NYMAGIC Policy included a Vendor's Endorsement, which provides as follows:

ENDORSEMENT # 5

ADDITIONAL ASSURED-VENDORS
(BROAD FORM-BLANKET BASIS)

> In consideration of the premium charged, it is hereby agreed that the definition of insured is amended to include any person or organization designated as a vendor but only with respect to the distribution or sale in the regular course of the vendor's business of the Named Insured's products subject to the following additional provisions:
>
> 1. The insurance with respect to the vendor does not apply to:
>
> (a) any express warranty unauthorized by the named insured;

2

(b) bodily injury or property damage arising out of

    (i) any physical or chemical change in the form of the product made intentionally by the vendor,

    (ii) repacking, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instruction from the manufacturer and then repacked in the original container,

    (iii) demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product, or

    (iv) products which after distribution or sale by the named insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. The insurance does not apply to any person or organization, as insured, from whom the named insured has acquired such products or any ingredient, part or container, entering into, accompanying or containing such products.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

CCA also held a Certificate of Liability Insurance naming NYMAGIC as a Phoenix

insurer for the period inclusive of Weaver's claim against CCA.[1]

CCA also purchased a products and completed operations insurance policy from

Evanston, No. SP-803006, for the period of March 8, 2001, through March 8, 2002 ("the

Evanston Policy"). The Evanston Policy was also issued on a claims-made basis, but had limits

of $4,000,000.00. Once CCA paid its $10,000.00 deductible, Evanston provided and funded

CCA with a defense against Weaver's claims.

_____

[1]This Certificate of Liability was not prepared by NYMAGIC and, on its face, does not confer any rights, but indicates only that CCA believed that it was covered by the Policy.

3

On January 8, 2002, pursuant to 28 U.S.C. § 1407, this matter was transferred to the

Judicial Panel on Multi-District Litigation, MDL No. 1407, In re Phenylpropanolamine (PPA)

Products Liability Litigation, and assigned to the United States District Court, Western District

of Washington at Seattle, where discovery was conducted. During this time, Evanston paid

$3,400.00, on behalf of CCA, for expenses and fees incurred during consolidated discovery.

On March 11, 2002, and June 20, 2002, CCA made demands on NYMAGIC for defense

and indemnification of any damages it might have to pay to Weaver. NYMAGIC declined

coverage on July 26, 2002.

This case was remanded from the Western District of Washington at Seattle to this Court

on March 27, 2006. See [Doc. No. 18].

On April 10, 2006, CCA again made a demand on NYMAGIC for defense and

indemnification, which NYMAGIC declined on May 17, 2006.

On June 15, 2006, with leave of Court, CCA filed a third-party complaint against Phoenix

and against NYMAGIC[2] for defense and indemnification.

On April 11, 2007, NYMAGIC filed a Motion for Summary Judgment [Doc. No. 41],

denying that CCA is covered under the NYMAGIC Policy because CCA was not a named

insured. NYMAGIC further argued that CCA was excluded from coverage under the Policy's

Vendor's Endorsement because CCA provided the formula Phoenix used to manufacture

Permathene, labeled or re-labeled Permathene for sale to the public, and extended an express

warranty to the public without Phoenix's permission.

---

[2]CCA originally named Mutual Marine Office, Inc. as the insurer of Phoenix, but
NYMAGIC is the insurer. See [Doc. No. 31].

4

After further briefing [Doc. Nos. 46 & 50], on May 22, 2007, the Court granted

NYMAGIC's Motion for Summary Judgment. [Doc. Nos. 52 & 53].

On June 8, 2007, the Court granted CCA's unopposed motion and certified its ruling for
appeal under Federal Rule of Civil Procedure 54(b).

On June 15, 2007, CCA timely filed its Notice of Appeal.

Around this time, Weaver and CCA reached an agreement under which Evanston paid
Weaver $85,000.00 to settle his claim against CCA. As a result, on June 18, 2007, the Court
granted Weaver and CCA's joint Motion to Dismiss and dismissed Weaver's claims against CCA
with prejudice.

On May 27, 2008, the United States Court of Appeals for the Fifth Circuit issued an
opinion reversing this Court. The Fifth Circuit examined whether NYMAGIC had a duty to
defend CCA under the Policy. Weaver v. CCA Industries, Inc., 529 F.3d 335, 339 (5th Cir.
2008) (The "'duty to defend . . . is determined by the allegations of the injured plaintiff's petition,
with the insurer being obligated to furnish a defense unless the petition unambiguously excludes
coverage. Thus, if, assuming all the allegations of the petition to be true, there would be both (1)
coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured
regardless of the outcome of the suit.'") (quoting Yount v. Maisano, 627 So.2d 148, 153 (La.
1993) (other citations omitted)).

First, the Fifth Circuit found that this Court had correctly concluded that CCA was a
"vendor" under the Vendor's Endorsement to the NYMAGIC Policy. Under Louisiana law,
"vendor's endorsements 'have been interpreted as providing coverage where the vendor is found
strictly liable for selling a defective product and excluding coverage where the vendor is found to

5

be independently negligent.'" Id. at 340 (citing McGill v. Cochran-Sysco Foods, 35,898 (La. App. 2 Cir. 05/08/02); 818 So.2d 301, 308 (other citations omitted)). However, the Fifth Circuit reversed this Court's finding that CCA was not covered under the Policy's Vendor's Endorsement because of its independent negligence. Instead,

> CCA could be held liable under the [Louisiana Products Liability Act ("LPLA")] as a manufacturer due to the fact that it labels [Permathene] and sells it on its own. . . . Weaver's claim under the LPLA therefore could potentially visit liability on CCA based on strict liability for Phoenix's actions. For example, if Phoenix deviated from the formula or failed to follow the formula in manufacturing the product, CCA could be liable as a manufacturer under the LPLA despite its lack of fault. Thus, CCA qualifies as an additional insured under [the Vendor's Endorsement] to the NY Marine policy with respect to Weaver's claim under the LPLA unless a specific exclusion to [that] Endorsement . . . precludes recovery.

Id. at 341. The Fifth Circuit did not identify any other basis for coverage.

The Fifth Circuit then considered the two exclusions in the Vendor's Endorsement relied upon by this Court: exclusions l(b)(iv) and 2. Exclusion 1(b)(iv) reads: "The insurance with respect to the vendor does not apply to . . . bodily injury or property damage arising out of . . . products which after distribution or sale by the named insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor." Exclusion 2 reads: "The insurance does not apply to any person or organization, as insured, from whom the named insured has acquired such products or any ingredient, part or container, entering into, accompanying or containing such products." Contrary to the conclusions of this Court, the Fifth Circuit found both exclusions to be inapplicable.

With regard to exclusion 1(b)(iv), the Fifth Circuit agreed that it was undisputed that CCA packaged, labeled, and marketed Permathene. However, the Fifth Circuit's "best Erie guess is that Louisiana would . . . [also] require the nexus between the alteration [i.e., the packaging,

6

labeling, and/or marketing] and the injury." Id. at 342. Thus, the Fifth Circuit found "[e]xclusion 1(b)(iv) . . . inapplicable because there existed no nexus between the harm alleged in some of Weaver's claims and the alteration and relabeling of the product."[3] Id. at 343.

Turning to exclusion 2, the Fifth Circuit also found it inapplicable because CCA provided the formula to Phoenix, and "the formula for a product is not an 'ingredient' for purposes of making that product." Id. Therefore, NYMAGIC had a duty to defend CCA under the Vendor's Endorsement to the Policy issued to Phoenix.

The case was then remanded to this Court for further proceedings. The only issue remaining before the Court is the third-party dispute between CCA and NYMAGIC.

On October 15, 2008, Magistrate Judge James D. Kirk granted CCA's insurer, Evanston, leave to intervene and permitted the filing of its Petition in Intervention. Evanston seeks to recover from NYMAGIC attorney's fees, defense costs, indemnity, and interest from the date of judicial demand. Evanston contends that it has incurred $17,600.00 in litigation expenses, including expert fees and multi-district litigation expenses, and an additional $85,000.00 for settlement of the underlying claim, all on behalf of CCA. CCA and Evanston have also been billed $195,434.64 in legal fees incurred in the defense of this case.

On February 26, 2009, CCA and Evanston filed the pending Motion for Partial Summary Judgment [Doc. No. 115]. On that same day, NYMAGIC also filed its pending Motion for Partial Summary Judgment [Doc. No. 116].

On March 13, 2009, the parties filed memoranda in opposition to the dispositive motions

---

[3]The Fifth Circuit stated that, "[a]rguably, Weaver's claim predicated on a failure to warn theory has a nexus to CCA's relabeling of the product," but "Weaver has a number of other recovery theories that have no nexus to the relabeling." Id. at 342-43.

[Doc. Nos. 120 & 121].

On March 25, 2009, with leave of Court, NYMAGIC filed a reply memorandum [Doc. No. 124].

Briefing is complete, and the Court is now prepared to rule on the pending motions.[4]

## II.    LAW AND ANALYSIS

### A.    Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. Topalian v. Ehrmann, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the applicable law in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. Id.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 1994). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the

---

[4]The parties have also filed Motions in Limine which will be addressed in a separate ruling. See [Doc. Nos. 125, 126, 127 & 129].

8

evidence supports his or her claim." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). The nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co.. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255.

## B.    CCA/Evanston's Right to Recover Attorney's Fees and Costs Related to Coverage Dispute

The Fifth Circuit has determined that CCA was entitled to a defense by NYMAGIC under its Policy. As a result, it is undisputed that CCA and/or its insurer Evanston are entitled to recover amounts expended in the defense of Weaver's underlying claim.

However, NYMAGIC moves for summary judgment on CCA and Evanston's claim that they are entitled to recover amounts incurred in contesting NYMAGIC's denial of coverage. In their own Motion for Partial Summary Judgment, CCA and Evanston wrote in a footnote that they reserved for trial the issue of whether NYMAGIC should pay attorney's fees and costs as a penalty for incorrectly interpreting coverage and cited La. Rev. Stat. 22:1892 (formerly La. Rev. Stat. 22:658). In their opposition memorandum to NYMAGIC's Motion for Partial Summary Judgment, CCA and Evanston did not respond to NYMAGIC's argument on this issue.

Under Louisiana law, attorney's fees are recoverable only when authorized by contract or statute. Steptore, 643 So.2d at 1218 (citing State. Through DOTD v. Williamson, 597 So.2d 439, 441 (La. 1992) (other citations omitted)). The Fifth Circuit has determined that NYMAGIC had a duty to defend CCA under the terms of the NYMAGIC Policy. "However, the insurance contract did not impose a duty on the insurer to pay attorney's fees in connection with the insured's

9

pursuit of the coverage issue. Nor are we directed to any statute providing for attorney's fees in this instance. Generally, if the insured hires an attorney to represent him in coverage disputes, he will have to bear those costs himself." Id. (citations omitted).

Further, the Court finds that any reliance by CCA and Evanston on La. Rev. Stat. 22:1892 is misplaced. That statute imposes penalties, including reasonable attorney's fees and costs, on an insurer which has failed to pay a claim within the time designated by statute and its failure is deemed to be arbitrary, capricious, or without probable cause. LA. REV. STAT. § 22:1892(B)(1). As the Louisiana Second Circuit has explained:

> La. R.S. 22:[1892][5] is penal in nature and must be strictly construed. Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983). One who claims entitlement to penalties and attorney's fees has the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause. Reed v. State Farm Mut. Auto. Ins. Co., 03-0107 (La.10/21/03), 857 So.2d 1012, citing Calogero v. Safeway Ins. Co. of La., 99-1625 (La.1/19/00), 753 So.2d 170. The phrase "arbitrary, capricious, or without probable cause" is synonymous with "vexatious." Both La. R.S. 22:[1892] and 22:1220 describe an insurer whose willful refusal of a claim is not based on a good faith defense. Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London, 616 So.2d 1250 (La.1993); Lewis v. State Farm Ins. Co., 41,527 (La.App. 2d Cir.12/27/06), 946 So.2d 708. An insurer has no duty to make an unconditional payment to a third party under La. R.S. 22:[1892]. Mallett v. McNeal, 05-2289 (La.10/17/06), 939 So.2d 1254.

Riser v. Shelter Mut. Ins. Co., 43,617 (La. App. 2 Cir. 10/29/08); 997 So.2d 675, 679. While the Fifth Circuit determined that NYMAGIC incorrectly denied coverage, the Court finds that NYMAGIC's error is insufficient to subject it to penalties under La. Rev. Stat. 22:1892, absent other evidence that it acted willfully and not in good faith. See Woods v. Dravo Basic Materials Co., 887 F.2d 618, 623 (5th Cir. 1989) ("Because the statute is penal in nature it should be

---

[5]The statute was, at the time of this decision, codified at La. Rev. Stat. 22:658.

10

strictly construed, and should not be invoked merely because an insurer is cast in judgment under the policy. . . The statute . . . should not be invoked where the insurer had a 'reasonable basis' for denying coverage or defense."). CCA and Evanston have presented no such evidence.

NYMAGIC's Motion for Partial Summary Judgment on this issue is GRANTED, and CCA and Evanston cannot recover attorney's fees and costs related to the coverage dispute.

## C.   CCA/Evanston's Right to Recover Defense Costs and Indemnification

CCA and Evanston contend that, based on the Fifth Circuit's opinion, they are entitled to recover defense costs, including attorney's fees, and indemnification of the settlement paid to Weaver. They also contend that they are entitled to interest on those amounts from the date of judicial demand.

NYMAGIC admits that it must pay some defense costs and indemnity. However, NYMAGIC contends that the "other insurance" clauses of the NYMAGIC and Evanston Policies are mutually repugnant, and, thus, defense costs should be split between it and Evanston. Similarly, NYMAGIC contends that, based on the other insurance clauses of both the NYMAGIC and the Evanston Policies, NYMAGIC is only called upon to pay one-fifth of the settlement amount. NYMAGIC contends that its contribution to settlement should be reduced further to the extent that CCA and Evanston paid to settle claims excluded from or not covered by the NYMAGIC Policy.

CCA and Evanston contend that NYMAGIC has waived these arguments.

### 1.   Waiver

CCA and Evanston contend that, by denying coverage, NYMAGIC waived its rights (1) to rely on the other insurance provisions to limit liability, (2) to contest the quantum of attorneys'

11

fees incurred in defending the underlying litigation, and (3) to rely on policy provisions and/or exclusions to restrict CCA from entering into a reasonable settlement with Weaver.

NYMAGIC responds that it consistently denied that it had a duty to defend CCA. Thus, it could not have knowingly waived its rights to control CCA's defense or to participate in CCA's settlement with Weaver.

"Waiver is generally understood to be the intentional relinquishment of a known right, power, or privilege." Steptore v. Masco Const. Co., Inc., 643 So.2d 1213, 1216 (La. 1994) (citations omitted). "Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." Id. (citations omitted). "[W]aiver may apply to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered. Of course, reliable proof of such a knowing and voluntary waiver is necessary and the burden of producing it, as in the proof of obligations generally, falls on the party who demands performance." Tate v. Charles Aguillard Ins. & Real Estate, Inc., 08 So.2d 1371, 1375 (La. 1987) (citations omitted).

In Steptore, the insured tendered a claim for defense to the insurer, Ocean Marine Indemnity Co. ("Ocean Marine"). Ocean Marine originally engaged attorneys to represent the insured and itself, but six months after undertaking the defense, Ocean Marine denied coverage on the grounds that the insured breached a policy provision. 643 So.2d at 1215. On appeal, the insured argued that Ocean Marine had waived its right to assert a coverage defense. The Louisiana Supreme Court found that Ocean Marine and its attorneys "possessed facts indicating a

possible defense to coverage based on a breach of the navigation warranty at the outset of this litigation." Id. at 1217. Despite knowledge of the facts, Ocean Marine undertook the defense of the insured "without reserving its rights or otherwise protecting its interests and continued to represent the insured when its own interests were adverse to the insured." Id. Therefore, the Louisiana Supreme Court held that Ocean Marine waived any coverage defense it may have had under the policy. Id.

In this case, the facts are just the opposite: NYMAGIC denied that it had a duty to defend by declining CCA's multiple tenders of the claim. As the parties are well aware, a "liability insurer's duty to defend and the scope of its coverage are separate and distinct issues." Motorola, Inc. v. Associated Indem. Corp., 2002 0716 (La. App. 1 Cir., 06/25/04); 878 So.2d 824, 836(citations omitted). NYMAGIC never raised the other insurances clause of its Policy or any other limitation defense regarding the scope of its coverage because it did not believe it owed CCA a duty to defend, much less a duty to indemnify. NYMAGIC maintained this position consistently until the Fifth Circuit determined otherwise. The Fifth Circuit's opinion issued well after CCA and Evanston settled the underlying claim with Weaver, and that opinion addressed only the duty to defend, not indemnification.

Under these undisputed facts, the Court finds that NYMAGIC did not knowingly and voluntarily relinquish its rights (1) to rely on the other insurance clauses of the Policies to limit liability, (2) to contest the quantum of attorneys' fees incurred in defending the underlying litigation, and (3) to contest the amount due as indemnification.[6]

---

[6]CCA and Evanston argued that NYMAGIC waived its right to rely on policy provisions and/or exclusions to restrict CCA from entering into a reasonable settlement with Weaver. The Court will address this contention more fully in the section on indemnification, infra. However,

13

## 2. Other Insurance Clauses of the Policies

The Court now turns to an analysis of the applicable provisions of the NYMAGIC and Evanston Policies. CCA and Evanston argue that, under the plain language of the NYMAGIC Policy, NYMAGIC was CCA's primary insurer on this claim, and, thus, NYMAGIC alone is responsible for the attorney's fees and defense costs.[7] NYMAGIC responds that the Court must look at both Policies, that it and Evanston are co-primary insurers, that the policies are mutually repugnant, and, as a result, that NYMAGIC and Evanston share responsibility for CCA's reasonable attorney's fees and defense costs, "either by equal shares or in proportion to the limits of each policy." [Doc. No. 116, p. 8].

"Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." LA. REV. STAT. § 22:881; American Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 262 (5th Cir. 2003). Under Louisiana law, an insurance policy is a contract between the parties that must be construed in accordance with the general rules of interpretation of contracts set forth in the Louisiana Civil Code. American, 352 F.3d at 262; Cadwallader v. Allstate Ins. Co., 2002-1637 (La. 06/27/03); 848 So. 2d 577, 580.

In interpreting an insurance contract, courts apply the "the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical

---

the Court notes that NYMAGIC does not contend that CCA and Evanston's decision to settle with Weaver was unreasonable. Rather, NYMAGIC argues that the policy provisions limit the amount that it must pay as indemnity.

[7] If Evanston is correct that NYMAGIC is the primary insurer, then Evanston has no liability because the amounts paid do not exceed NYMAGIC's Policy limits of $1,000,000.00.

meaning." LA. CIV. CODE art. 2045; Carbon v. Allstate Ins. Co., 719 So.2d 437, 440 (La. 1998). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046; American, 352 F.2d at 262 (If "the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written."). Further, "[t]he words of a contract must be given their generally prevailing meaning." LA. CIV. CODE art. 2047. Finally, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE art. 2050; American, 352 F.3d at 262.

"[W]hen two [insurance] policies afford the same layer of coverage and both contain conflicting 'other insurance' clauses which are irreconcilable, the policies must share liability on a pro rata basis." Samuels v. State Farm Mut. Auto. Ins. Co., 2006-0034 (La. 10/17/2006); 939 So.2d 1235, 1241 (citing Graves v. Traders and General Ins. Co., 252 La. 709, 214 So.2d 116 (1968)). However, if the "policies simply provide different layers of coverage," the policies are not mutually repugnant. Id.

In this case, both Policies provided coverage for "claims made" based on products completed/operations hazard. See [Doc. No. 115, Exh. 2 (The NYMAGIC Policy provides coverage to insureds for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' included within the 'products-completed operations hazard' to which the insurance applies."); [Doc. No. 116, Exh. E, Policy, p. 1 (The Evanston Policy provides coverage for "all sums in excess of the deductible . . . the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST

15

MADE AGAINST THE INSURED DURING THE POLICY PERIOD for bodily injury or
property damage caused by an occurrence [that] . . . arises out of the products hazard or
completed operations hazard as defined herein. . . .").

Both the NYMAGIC and the Evanston Policies also had an other insurance clause,
purporting "to limit or eliminate the insurers' respective liabilities in certain circumstances for
losses covered by 'other insurance.'" American Intern. Specialty Lines Ins. Co. v. Canal Indem.
Co., 352 F.3d 254, 258 (5th Cir. 2003). As the Fifth Circuit has explained, there are typically
three categories of other insurance clauses:

> (1) "pro rata" clauses, which provide for apportionment of responsibility among
> insurers, usually either in proportion to their respective policy limits or in equal
> shares up to the limits of each policy; (2) "excess" clauses, which provide that
> policy coverage will apply only as excess insurance over any other valid and
> collectible insurance; and (3) "escape" clauses, which provide that the insurer will
> have no liability if there is other insurance coverage available to the insured,
> rendering the policy's coverage "contingent upon the absence of any other
> coverage."

Id. at 258 n.1 (citing WILLIAM S. MCKENZIE & H. ALSTON JOHNSON, III, 15 LOUISIANA CIVIL LAW

TREATISE, INSURANCE LAW & PRACTICE § 228 (2d ed. 1996)). The NYMAGIC Policy had a pro

rata clause, providing as follows:

## C. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we
cover under this policy, our obligations are limited as follows:

### 1. Primary Insurance

**This insurance is primary except when (2) below applies.[8] If
this insurance is primary, our obligations are not affected
unless any of the other insurance is also primary.** Then, we will

---

[8]NYMAGIC admits that the conditions in Section 2 do not apply.

16

share with all that other insurance by the method described in (3) below.

**2.    Excess Insurance**

This insurance is excess over any of the other insurance whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to "bodily injury" or "property damage" on other than a claims-made basis, if:

(a)    No Retroactive Date is shown in the Declarations of this insurance, or

(b)    The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance.

. . .

We will share the remaining loss, if any, with any other insurance that is not described in this Excess insurance provision and was not bought specifically to apply in excess of the Limits of insurance shown in the Declarations of this Coverage Part.

**3.    Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the less remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this approach, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

[Doc. No. 115, Exh. 2, NYMAGIC Policy, p. 13, Section IV (emphasis added)]. The Evanston

Policy contained an excess other insurance clause, providing as follows:

This insurance shall be in excess of the amount of the applicable deductible of this policy and any other valid and collectible insurance available to the Insured whether such insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance

17

over the limits of liability provided in this policy.

[Doc. No. 116, Exh. E, Policy, p. 7].

In American International, the Fifth Circuit addressed a similar issue. In that case, the insured, Travis Fixed Based Operation and Service Corporation ("Travis"), had obtained insurance policies from both Canal Indemnity Company ("Canal") and American International Specialty Lines Insurance Company ("AISLIC"). 352 F.3d at 257-58. Both policies covered accidents by Travis truck drivers in which diesel fuel spilled, resulting in pollution and clean-up damages. Id. The Canal policy had a pro rata-type other insurance clause, while the AISLIC had an escape-type other insurance clause. Id. at 258. Like NYMAGIC in this case, Canal sought contribution from AISLIC on the basis that, "under Louisiana case law, 'other insurance' clauses such as that contained in the Canal and AISLIC policies are mutually repugnant and must be disregarded, requiring courts to pro rate the loss between co-insurers based upon their respective policy limits." Id. at 261.

Applying Louisiana law, the Fifth Circuit rejected Canal's argument and agreed with the district court that a "plain reading of both policies clearly and explicitly reveals that the Canal policy 'provides the [sole] primary coverage for . . . claim up to its policy limits,' while 'AISLIC['s] policy provides no coverage for this claim to the extent that [it] is covered by Canal's policy.'" Id. The Fifth Circuit determined that the district court properly "adhered to Louisiana principles of contractual interpretation as articulated by the state's highest court, declining to 'change or alter' the clear terms of the two policies 'under the guise of interpretation.'" Id. (citing Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-C-0911 (La. 1/14/94); 630 So.2d 759, 763; Central La. Elec. Co. v. Westinghouse Elec. Corp., 579 So.2d

18

981, 985 (La. 1991)). The Fifth Circuit then reviewed and applied the plain language of both policies, determining that Canal was the primary insurer and solely liable to its policy limits.

In this case, applying the plain language of the Policies, the Court finds that the two Policies did not contain conflicting other insurance clauses which are irreconcilable. There are two valid policies in place covering the injuries allegedly suffered by Weaver. The NYMAGIC Policy identifies NYMAGIC as the "primary insurer." Further, the NYMAGIC Policy plainly provides that NYMAGIC's "obligations are not affected," i.e., it does not contemplate contribution from another insurer, "unless any of the other insurance is also primary." [Doc. No. 115, Exh. 2, p. 13, Section IV]. The Evanston Policy, on the other hand, states that "[t]his insurance **shall be in excess of. . .** any other valid and collectible insurance available to the Insured . . . unless such other insurance is written only as specific excess insurance over the limits of liability provided in this policy." [Doc. No. 116, Exh. E (emphasis added)]. The other insurance clauses of the two Policies are not mutually repugnant, but consistently read to hold NYMAGIC primarily responsible for liability with Evanston serving as excess insurer.

The Court is aware that some Louisiana appellate courts have found excess and pro rata other insurance clauses to be mutually repugnant. See Penton v. Hotho, 601 So.2d 762 (La. App. 1 Cir. 5/22/92). However, the Fifth Circuit was aware of Penton and addressed that case in American International. As in American International, the Court finds that Louisiana courts would enforce the NYMAGIC and Evanston Policies as written and would not impose a per se rule of apportionment. See American International, 352 F.3d at 273-74.

Accordingly, the Court finds that NYMAGIC is the primary insurer for Weaver's claim. Because the defense costs do not exceed the NYMAGIC Policy limits, CCA and Evanston are

19

entitled to collect the full amount of the attorney's fees (in an amount to be determined by the Court) and defense costs in the amount of $17,600.00. CCA and Evanston's Motion for Partial Summary Judgment is GRANTED, and NYMAGIC's Motion for Summary Judgment is DENIED on this basis.

### 3. Indemnity

The Court's determination that NYMAGIC is solely responsible for the defense costs does not resolve the issue of indemnification. CCA and Evanston also seek full indemnification for the $85,000.00 settlement paid to Weaver. They contend that they had the right to enter into a settlement without NYMAGIC's approval when NYMAGIC refused to defend CCA and that NYMAGIC is bound by that settlement under the Miller-Shugart doctrine. Alternatively, CCA and Evanston contend that NYMAGIC cannot rely on a no-action clause in the Policy prohibiting CCA and Evanston from settling the underlying claim prior to final judgment and that NYMAGIC is liable for the entire amount of the settlement if CCA had potential liability for a claim covered by the NYMAGIC Policy.

NYMAGIC responds that the Miller-Shugart doctrine has not been adopted by Louisiana courts. Further, NYMAGIC points out that it is **not** attempting to rely on the "no action" clause of its Policy. NYMAGIC instead argues that it relies on its Policy terms and exclusions to limit the amount (if any) of indemnification due CCA and Evanston.

Weaver asserted products liability claims against CCA under five theories: (1) design defect, (2) manufacturing defect, (3) failure to conform to an express warranty, (4) failure to

warn, and (5) failure to adequately and properly test.[9] Weaver, 529 F.2d at 337. In the Fifth

Circuit opinion in this matter, the appellate court agreed that CCA did not have coverage for

claims based on CCA's independent negligence. Id. at 340. However, the Fifth Circuit found

that NYMAGIC had a duty to defend because one claim--the manufacturing defect claim--could

impose strict liability on CCA for labeling and selling Permathene as its own product. Id. at

340-41 ("Weaver's complaint also asserts a strict liability claim under the . . . LPLA . . . based on

the allegation that the product was unreasonably dangerous in construction or composition.";

CCA could be strictly liable if Phoenix "deviated from" or "failed to follow" the formula CCA

provided.). Thus, the Fifth Circuit found that NYMAGIC had a duty to defend based on CCA's

potential liability on this one claim.

An insurer's duty to defend is broader, though, than its duty to indemnify. See Weaver,

529 F.3d at 339.

> Indemnity is due when fairness requires that one person bear the total
> responsibility for an injury. The basis for indemnity in the civil law is restitution,
> the indemnitor having been unjustly enriched when the person seeking indemnity
> has discharged liability that was his responsibility. Klumpp v. XYZ Ins. Co., 547
> So.2d 391, 393 (La. App. 3rd Cir.), writ denied, 551 So.2d 1322 (La. 1989).

Vaugh v. Franklin, 2000-0291 (La.App. 1 Cir. 3/28/01); 785 So.2d 79, 87.

After this Court's determination that NYMAGIC had no duty to defend, but before the

Fifth Circuit's reversal of that determination, CCA and Evanston settled with Weaver.

CCA and Evanston now rely on a common law doctrine developed in Miller v. Shugart,

---

[9]NYMAGIC points out that a failure to test and other theories advanced by Weaver, such as conspiracy to conceal information about the dangers of Permathene, are not cognizable under the LPLA, the exclusive remedy against manufacturers for damages caused by their products. The Court agrees, but finds no reason to reach this analysis because CCA and Evanston do not appear to contest this premise.

21

316 N.W.2d 729 (Minn. 1982), for the proposition that NYMAGIC must indemnify them for the total amount of the settlement paid to Weaver. Under Miller-Shugart doctrine, adopted by a number of other courts, CCA and Evanston need only show that (1) CCA was covered by NYMAGIC for the damages sought; (2) the settlement agreement between CCA/Evanston and Weaver is not the product of fraud or collusion; and (3) the settlement agreement is reasonable and prudent. Id. at 732–33; see also [Doc. No. 115, p. 15].

However, as pointed out by NYMAGIC and as admitted by CCA and Weaver, the Miller-Shugart doctrine has not been adopted by any Louisiana court. Louisiana courts have provided guidance on this situation, and this Court, sitting in diversity, declines to adopt a common law doctrine in the face of Louisiana case law on point.

CCA and Evanston next rely on a 1958 Louisiana Supreme Court case, Thomas W. Hooley & Sons v. Zurich Gen. Acc. & L. Ins. Co., 103 So.2d 449, 453 (La. 1958).[10] In Hooley, the insured had a contract with the City of New Orleans to dismantle the statue of Robert E. Lee and the supporting stone column at Lee Circle for repair. During the work, a portion of the column fell from a crane and damaged a large ornamental cast-iron urn located at the monument's base. The insured's insurance company denied liability for the damages, and the insured reached an agreement with the City and repaired the damages at the insured's cost. The insured, as plaintiff, then sued its insurer.

_____

[10]CCA and Evanston first argue that Hooley "suggests a Louisiana court would be receptive to the Miller-Shugart doctrine were it presented to the court." [Doc. No. 115, p. 16]. As NYMAGIC points out, no Louisiana court has even discussed this case by name. This Court again declines to adopt a common law doctrine issued by a Minnesota court in 1982, which has never been discussed by a Louisiana court in the ensuing 27 years. The Court has considered Hooley itself.

The insurer raised a number of defenses, including the "no action" clause contained in the policy of insurance. The Louisiana Supreme Court wrote:

> Although most of the cases involved not only (as here) an unjustified denial of liability but also a specific refusal to defend an action brought against the insured, the reasoning therein as well as the equitable reasons therefore [sic] support the conclusion that by the mere denial of the insurer to its insured of any liability under the insurance policy for the damages claimed by a third person, the insurer forfeits its right to claim the benefits of the 'no action' clause, and the insured policyholder even in the absence of litigation may compromise the claim against him without prejudicing his right to recover from the insurer the amount of a reasonable and good faith settlement made by him. . . .

Hooley, 103 So.2d at 452.

This Court agrees with the general proposition of Hooley that, by refusing to defend CCA, NYMAGIC "forfeits its right" to assert the "no action" clause of the Policy. That is, NYMAGIC cannot contest CCA and Evanston's right to seek indemnification merely because it did not obtain NYMAGIC's approval for the settlement. NYMAGIC, however, is not asserting the no action clause of the Policy.

Instead, NYMAGIC contests whether indemnification is owed on the one cause of action for which it owed a duty to defend. Generally, an indemnitee (CCA/Evanston) must establish actual liability in order to recover payment from an indemnitor (NYMAGIC). See James v. Hyatt Corp. of Delaware, 981 F.2d 810 (5th Cir. 1993). Where the indemnity claim is based on a written contract, such as an insurance policy, the indemnitee need show only potential, rather than actual, liability on its part to recover. See Tabor v. Anco Insulations, Inc., 2008-694 (La. App. 3 Cir. 12/10/08); 999 So.2d 258, 265; Terra Resources v. Lake Charles Dredging & Towing, 695 F.2d 828, 831 (5th Cir. 1983); Rovira v. LaGoDa, Inc., 551 So.2d 790, 795 (La. App. 5th Cir. 1989), writ denied, 556 So.2d 36 (La.1990); Vaughn v. Franklin, 00-291, p. 10 (La.

23

App. 1 Cir. 3/28/01); 785 So.2d 79, 87, writ denied, 01-1551 (La. 10/5/01), 798 So.2d 969.

Thus, if CCA and Evanston can establish potential liability to Weaver for the manufacturing defect claim for which NYMAGIC provided coverage, they may recover payment from NYMAGIC for their settlement with Weaver. Because CCA and Evanston have provided the Court with no argument of the evidence regarding CCA's liability on this claim, CCA and Evanston's Motion for Partial Summary Judgment on indemnification is DENIED, and this claim will be addressed at trial.[11] If CCA and Evanston cannot establish that CCA had potential liability on the manufacturing defect claim, then they cannot obtain indemnification from NYMAGIC. See Vaughn, 785 So.2d at 87-88 (The party asserting that it was entitled to indemnification could not recover when it "did not attempt to show at trial the potential liability of [the insured].").

NYMAGIC raises one final issue, however. NYMAGIC contends that, even if CCA and Evanston can show that CCA had potential liability for the manufacturing defect claim, NYMAGIC should not be held liable for the full amount of settlement, to the extent that the settlement encompassed other claims that were not covered by the Policy. In other words, does Louisiana law permit an insured to recover the entire amount or balance of a settlement amount when coverage is potentially available for only one of the claims alleged in the plaintiff's complaint? While NYMAGIC provided argument that the claims other than the manufacturing defect claim were not covered under its Policy, it did not cite a single case for the proposition

---

[11]"A court confronted with a valid indemnity agreement 'should insure that the claim was not frivolous, that the settlement was reasonable, that it was untainted by fraud or collusion, and that the indemnitee settled under a reasonable apprehension of liability.'" Bourg v. Chevron U.S.A. Inc., 91 F.3d 141, 1996 WL 400351, at *3 (5th Cir. June 21, 1996) (quoting Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1218 (5th Cir. 1986)).

24

that the Court should somehow parse out from an otherwise reasonable settlement claims that were and were not covered by the Policy. CCA and Evanston have not addressed this issue either. Accordingly, NYMAGIC's Motion for Partial Summary Judgment on this issue is DENIED, and the Court will require both parties to brief this issue as part of their pre-trial submissions.

### 4. Interest

Finally, CCA and Evanston seek interest on amounts awarded from the date of judicial demand. NYMAGIC does not dispute that CCA and Evanston are entitled to interest on amounts awarded. NYMAGIC disputes the date from which interest should run. The amount of attorney's fees have not yet been determined in this matter and, thus, NYMAGIC contends that, under Louisiana Civil Code article 2000, interest is not due until the Court's Judgment is rendered. With regard to indemnity, NYMAGIC contends that judicial interest did not begin to run until settlement was paid.

In the cases cited by CCA and Evanston, plaintiffs in a delictual action are permitted to recover pre-judgment interest from the date of judicial demand. However, CCA and Evanston are attempting to recover defense costs and indemnification pursuant to a contract–an insurance policy. See Corbello v. Iowa Production, 02-0826, p. 29 (La.2/25/03), 850 So.2d 686, 706 (holding that "[u]nlike judgments in ex delicto actions wherein judicial interest attaches from judicial demand, interest is recoverable on debts arising ex contractu from the time they become due, unless otherwise stipulated."). Thus, CCA and Evanston can recover interest on defense costs and attorney's fees from the date judgment is entered. The Court is awarding defense costs as part of this Ruling, and, thus, interest will run on the defense costs from the date this Ruling

25

and Judgment are entered. The amount of attorneys' fees is an issue reserved for trial, so interest will not run on this award until final judgment is entered.

Interest on the settlement CCA and Evanston paid to Weaver did not begin to accrue until the date CCA and Evanston paid the settlement, "giving rise to an indemnity obligation on [NYMAGIC's] part." Arceneaux v. Amstart Corp., 969 So.2d 755, 785 (La. App. 4 Cir. 10/31/07) (An argument that interest should run from the date of the plaintiff's judicial demand "overlooks that the present dispute is solely a contractual dispute between [the insurers].")

In summary, CCA and Evanston's Motion for Partial Summary Judgment on interest is DENIED. Interest will not run from the date of judicial demand. However, interest runs on the award of defense costs of $17,600.00 from the date of this Ruling and Judgment. Interest will run on the award of attorneys' fees from the date of final judgment, following trial. Interest will run on the settlement CCA and Evanston paid to Weaver from the date it was actually paid.

## III.  CONCLUSION

For the reasons set forth above, the Motion for Partial Summary Judgment [Doc. No. 115] filed by CCA and Evanston is GRANTED IN PART and DENIED IN PART. The Motion for Partial Summary Judgment [Doc. No. 116] filed by NYMAGIC is also GRANTED IN PART and DENIED IN PART.

Under the terms of the NYMAGIC and Evanston Policies, NYMAGIC is the primary insurer on Weaver's claims and is liable for reasonable attorney's fees and all defense costs. To this extent, CCA and Evanston's motion is GRANTED, and NYMAGIC's motion is DENIED. Judgment is entered in favor of CCA and Evanston in the amount of defense costs of $17,600.00. The amount of attorneys' fees will be determined at trial.

NYMAGIC is not liable for CCA and Evanston's attorney's fees and costs related to the coverage dispute, and NYMAGIC's motion on this issue is GRANTED.

CCA and Evanston's Motion for Partial Summary Judgment on indemnification is DENIED, and this claim will be addressed at trial.

Finally, CCA and Evanston's Motion for Partial Summary Judgment on interest is DENIED. Interest will not run from the date of judicial demand, but from the dates set forth in the Court's Ruling.

MONROE, LOUISIANA, this __12__ day of __May_____, 2009.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE